```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
                       FORT WORTH DIVISION

ESTATE OF TROY JAMES DAVIS,      §
et al.                           §
                                 §
VS.                              §   CIVIL ACTION NO. 4:00-CV-438-Y
                                 §    (Consolidated with 4:01-CV-1008-Y)
CITY OF NORTH RICHLAND HILLS,    §
et al.                           §
```

ORDER GRANTING MOTION TO EXCLUDE PORTIONS OF EXPERT OPINION

The Court has before it defendant Allen Hill's motion requesting that the Court exclude certain opinions of Plaintiffs' expert, Edward Hueske (doc. #367). After review of the motion, the response, and reply, the Court concludes that Hill's motion should be GRANTED.

The cause of action against Hill arises out the execution of a "no-knock" search warrant of the residence of Barbara Jean and Troy James Davis that resulted in the shooting death of Troy Davis. Hill was a North Richland Hills police officer and was part of a tactical team that executed a no-knock search warrant on the Davises' home. It is undisputed that Hill was the first officer into the Davis residence. And it is undisputed that Hill fatally shot Troy Davis within seconds after entering. Hotly contested, however, are the circumstances under which Hill shot Troy Davis.

Plaintiffs allege that Hill used excessive force when he shot and killed Troy Davis. In support of their claim, Plaintiffs retained Hueske to offer expert opinions concerning the forensic evidence at the scene of the shooting. In particular, Hill is objecting to two of Hueske's opinions: First is his opinion "that

Officer Hill was probably startled by Troy Davis . . . ." And second, that "Officer Hill fired on impulse."

> According to Hueske,
>
> I am trained as a forensic scientist and I have been involved in numerous criminal and or civil investigations involving the use of firearms and similar matters. Based on my training and experience, I am able to examine a crime scene and reconstruct the events that precipitated it. . . . I teach students techniques of criminal investigation and crime scene reconstruction as well as forensic firearms identification techniques. I am also qualified to analyze and use autopsy reports in my field of endeavor. I can provide scientific, technical, and specialized knowledge to assist in the interpretation of the physical evidence and circumstances associated with a crime or a shooting.

Hueske's curriculum vitae indicates that he received a bachelor's and a master's degree in chemistry from Sam Houston State University in 1968 and 1971, respectively. He has attended numerous special courses such as the *DEA Forensic Chemist Seminar,* the *FBI Glass Analysis Course,* and *Crime Scene Reconstruction,* among many, many others. He has also presented numerous papers on crime-scene reconstruction, bloodstain pattern interpretation, and forensic science. And for more than ten years, he has taught courses on these subjects.

While very impressive, Hueske's expertise lies in offering an opinion as to how a particular crime may have occurred. Or more specific to this case, his expertise lies in offering opinions as to how the shooting death of Troy Davis may have occurred. More

2

specifically, Hueske's value is in opining, based on his evaluation of the forensic evidence at the scene, as to where Hill and Troy Davis were situated in the residence when Hill shot Davis, and whether, based on the forensic evidence, the shooting could have occurred as described by Hill.

But Hueske's expertise does not extend to why the shooting occurred or why Hill decided to fire his weapon. And yet, that's exactly what a portion of Hueske's opinion purports to cover. At the end of Hueske's written report, he gives the following opinion:

> Based on my 28 years experience, the investigation of numerous officer-involved shootings and personal study and research into the field, it is my opinion that Officer Hill was probably startled by Troy Davis as Officer Hill stepped into the doorway between the hallway and the living room and saw him in the living room and Officer Hill fired on impulse.

In his deposition, Hueske explained that by saying Hill was "startled" he was opining that when Hill came around the corner to the living room, he didn't "think he (Hill) expected to see Troy Davis." In other words, Hueske opined that Hill did not expect to encounter Troy Davis and was thus startled. Hueske conceded, however, that this opinion was based solely on Hill's statements regarding the shooting and on none of the forensic evidence at the scene. And Plaintiffs have failed to identify any statement from Hill that indicates Hill admitted to being startled.

Also in his deposition, Hueske explained what he meant when he opined that Hill fired on impulse.

3

> My verison of what that means would be according to his training. . . . He has been told that there's an individual that's possibly armed, so he comes around the corner and he's the guy (Troy Davis) right in front of him and he fires."

Hueske based his opinion that Hill fired on impulse on

> the fact -- the location of the gun, the orientation of the gun, the location of all the physical evidence is contradictory to someone standing in a two-handed stance with a gun pointed directly at this officer.
>
> This whole account is incredulous [sic] (referring to Hill's account of the shooting). Turns to his left, which we discussed last time, is opposite to the direction of the living room. So that means he has to do a 360 if he turns to his left. He's got a loaded gun, a cocked gun, pointed out in front. He gets shot twice and he doesn't pull the trigger, but yet he carries the gun, places it down between the sofa cushions upside down, and then collapses on his back.
>
> And we've got bullets, bullet fragments in the southeast corner. We've got a bullet under the skirting. We've got a cartridge case in there, but all of this is supposed to have taken place in a hallway with a continuous forward motion of a column with a guy standing in front of a Victrola in a two-handed stance. I don't buy it. So that's my basis for saying [Hill] fired on impulse.

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. *See* FED.R.EVID. 702. Nothing in Rule 702 "requires a district court to admit opinion evidence

4

that is connected to existing data only by the *ipse dixit* of the expert," and "a court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Company v. Joiner,* 522 U.S. 136, 146 (1998); *Kumho Tire Company v. Carmichael,* 526 U.S. 137, 158 (1999).

Here, the Court concludes that Hueske's opinion that Hill was startled when he encountered Troy Davis in the home is pure speculation. Hueske was not present at the scene and was thus not an eye witness to Troy Davis's shooting. All Hueske can rely on is the forensic evidence at the scene and any statements made by Hill or others who witnessed the shooting. And neither Hueske nor Plaintiffs have been able to identify any statement that supports Hill's being, in fact, startled when he encountered Troy Davis.

Hueske's opinion that Hill fired on impulse is equally as speculative. That opinion is based on an evaluation of forensic evidence that is relevant to whether the shooting occurred as Hill describes it. It is one thing, after an evaluation of the forensic evidence at the shooting, to opine that Hill's description of how the shooting occurred is incorrect; but it is a great leap of logic to then opine, based on that same evaluation of the forensic evidence, that therefore Hill must have fired on impulse.

It is very evident to the Court that Hueske is qualified to give expert testimony that evaluates the forensic evidence at the shooting scene and offer an opinion as to how the shooting may have

5

occurred based on that forensic evidence. But the Court agrees with Hill that Hueske's expertise in the evaluation of forensic evidence "in no way qualifies him to opine [or speculate for that matter] as to Hill's state of mind." Put simply, there is just "too great an analytical gap" between the forensic evidence used by Hueske and his opinion that Hill must have been startled when he encountered Troy Davis and must have fired on impulse.[1]

While it may be reasonably inferred based on the evidence surrounding the shooting that Hill was startled when he encountered Troy Davis and that he subsequently fired his gun on impulse, the Court concludes that Hueske's expert opinion regarding Hill's state of mind and Hill's action based on his state of mind crosses the line from assisting the jury in understanding the evidence and determining a fact in issue to evading the province of the jury. It is for the jury to determine whether Hill was startled and fired on impulse, not Hueske. And Hueske's opinion is not based on any scientific evaluation of the forensic evidence at the scene of the shooting; instead, his opinion is better classified as argument to the jury as to what conclusion they should draw.

---

[1] The Court also notes that Hueske's opinion contains contradictions. On the one hand, Hueske opines that Hill did not expect to encounter Troy Davis, but on the other hand, Hueske opines that Hill fired on impulse because Hill expected to encounter an armed individual. Such contradiction, which is not present in Hueske's other opinions regarding how the shooting occurred based on his evaluation of the forensic evidence, illustrates Hueske's opinion is mere speculation as to Hill's state of mind.

6

Therefore, Hill's motion to exclude portions of Hueske's opinion that Hill was startled when he encountered Troy Davis and fired his gun on impulse is GRANTED.

SIGNED February 28, 2007.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE