IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ESTATE OF TROY JAMES DAVIS, et al. | § § § |
| VS. | §   CIVIL ACTION NO. 4:00-CV-438-Y § (Consolidated with 4:01-CV-1008-Y) |
| CITY OF NORTH RICHLAND HILLS, et al. | § § |

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

The Court has before it a motion for summary judgment (doc. #330) by defendant City of North Richland Hills ("NRH"). NRH argues that it is entitled to summary judgment against Plaintiffs' claims of municipal liability under 42 U.S.C. § 1983. After review of the motion, the response, and reply, the Court concludes that NRH's motion should be GRANTED.[1]

I.  Factual Background

The cause of action against NRH arises out the execution of a "no-knock" search warrant of the residence of Barbara Jean and Troy James Davis that resulted in the shooting death of Troy Davis. A detailed accounting of the facts are contained in the Court's order of September 30, 2003, and will not be repeated here.

In summary, Allen Hill was a NRH police officer and was part of a special tactical team that executed a no-knock search warrant on the Davises' home. Officer Hill was the first to enter the Davis residence, and it is undisputed that Officer Hill fatally

---

[1] In its reply to Plaintiffs' response to the summary-judgment motion, NRH makes numerous objections to Plaintiffs' summary-judgment evidence. The Court overrules those objections.

shot Troy Davis within seconds after entering. The circumstances under which Officer Hill shot Troy Davis, however, are hotly contested.

Acting from information provided by Chris Davis, Troy Davis's cousin, Officer J. A. Wallace obtained a no-knock search warrant for the Davis residence. Chris Davis reported to Officer Wallace that Barbara and Troy Davis had been growing substantial amounts of marijuana in their home. He also advised that Troy Davis possessed several handguns in the home. And he advised that Troy Davis had opened his front door brandishing a handgun.

Based on that information, Officer Wallace prepared an affidavit to establish probable cause for the issuance of a search warrant for the Davis home. In that affidavit, he requested a "no-knock entry" be permitted "in order to reduce the risk of injury to officers and individuals . . ., and to further prevent the destruction of evidence upon arrival . . . ." Officer Wallace presented the warrant to State District Court Judge Sharen Wilson, who authorized it.

NRH authorized the NRH police chief to establish the official policies governing the conduct and operation of the NRH police department. The policies promulgated by the police chief are the official policies of NRH and there are no ordinances or charter provisions governing the NRH police department. In response to this delegation, the NRH police department issued general orders. These orders covered the seeking of warrants, execution of warrants, the use of force, and arrests. Much of the general

orders are restatements of the law.

II. Analysis

A. Summary Judgment Standard

When the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," summary judgment is appropriate. FED. R. CIV. P. 56(c). An issue is considered "genuine" if "it is real and substantial as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citing *Wilkinson v. Powell*, 149 F.2d 335, 337 (5th Cir. 1945)). Facts are considered "material" if they "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether there are any genuine issues of material fact, the Court must first consult the applicable substantive law to ascertain what factual issues are material. *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990). Next, the Court must review the evidence on those issues, viewing the facts in the light most favorable to the nonmoving party. *Id.; Newell v. Oxford Mgmt. Inc.*, 912 F.2d 793, 795 (5th Cir. 1990); *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir. 1989). In making its determination on the motion, the Court must look at the full record including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits.

3

*See* FED. R. CIV. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Rule 56, however, "does not impose on the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). Thus, parties should "identify specific evidence in the record, and . . . articulate" precisely how that evidence supports their claims. *Forsyth v. Barr*, 19 F.3d 1527, 1536 (5th Cir. 1994). Further, the Court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

To prevail on a summary-judgment motion, the moving party has the initial burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). A defendant moving for summary judgment may submit evidence that negates a material element of the plaintiff's claim or show that there is no evidence to support an essential element of the plaintiff's claim. *See Celotex Corp.*, 477 U.S. at 322-24; *Crescent Towing and Salvage Co. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994); *Lavespere*, 910 F.2d at 178.

To negate a material element of the plaintiff's claim, the defendant must negate an element that would affect the outcome of the action. *See Anderson*, 477 U.S. at 247. If the defendant moves

4

for summary judgment alleging no evidence to support an essential element of the plaintiff's claim, the defendant need not produce evidence showing the absence of a genuine issue of fact on that essential element.  Rather, the defendant need only show that the plaintiff, who bears the burden of proof, has adduced no evidence to support an essential element of his case. *See Celotex*, 477 U.S. at 325; *Teply v. Mobil Oil Corp.*, 859 F.2d 375, 379 (5th Cir. 1988).

When the moving party has carried its summary-judgment burden, the respondent must go beyond the pleadings and by his own evidence set forth specific facts showing there is a genuine issue for trial.  *Arbaugh v. Y&H Corp.*, 380 F.3d 219, 222 (5th Cir. 2004) (citing *Celotex*, 477 U.S. at 324); *see also* FED. R. CIV. P. 56(e). This burden is not satisfied by creating some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50.

B.  Standard for Municipal Liability

"It is clear that a municipality may not be held liable under section 1983 on the basis of *respondeat superior*."  *Johnson v. Nacogdoches County, et al.,* 379 F.3d 293, 308 (5th Cir. 2004); *Monell v. Department of Social Services,* 436 U.S. 658, 694 (1978).

5

To establish municipal liability under section 1983, a plaintiff must prove three elements: (1) a policy (2) of the municipal's policymaker (3) that is the moving force behind a violation of a constitutional right. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell,* 436 U.S. at 694.

First, a plaintiff must identify an official policy of the municipality. Municipal policy encompasses a wide range of behavior, and for purposes of section 1983 liability, may consist of:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officer or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Nacogdoches County,* 379 F.3d at 309; *Johnson v. Moore,* 958 F.2d 92, 94 (5th Cir. 1992).

Next, a plaintiff must establish that the identified policy came from a policymaker of the municipality. "A policy or custom becomes official for purposes of § 1983 when it results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the

6

offending policy." *Gros v. City of Grand Prairie*, 181 F.3d 613, 615 (5th Cir. 1999). Because a municipality cannot be held vicariously liable for the constitutional torts of its employees or agents under section 1983, the official policy requirement was established

> to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible. *Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts "of the municipality" — that is, acts which the municipality has officially sanctioned or ordered.

*Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986).

Finally, a plaintiff must prove that the municipality's official policy was the driving force behind the constitutional violation. This means that there must exist a direct casual connection between the municipal policy and the constitutional deprivation, and this connection must be more than mere "but for" causation. *Piotrowski,* 237 F.3d at 580; *Fraire v. City of Arlington,* 957 F.2d 1268, 1281 (5th Cir. 1992). Causation can be established by a plaintiff showing that the policy or custom itself violated federal law or authorized or directed the deprivation of federal rights, or, that the policy or custom was adopted or maintained by the municipality's policymakers with deliberate indifference as to its known or obvious consequences. *Nacogdoches County,* 379 F.3d at 309; *Board of County Commissioners of Bryan*

7

*County v. Brown,* 520 U.S. 397, 406-07 (1997). The Supreme Court has made clear that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan County*, 520 U.S. at 410. And deliberate indifference is more than mere negligence, for "simple or even heightened negligence will not suffice." *Id.* at 407; *Conner v. Travis County, et al.,* 209 F.3d 794, 796 (5th Cir. 2000).

> These requirements must not be diluted, for "where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability."

*Snyder v. Trepagnier,* 142 F.3d 791, 796 (5th Cir. 1998)(quoting *Bryan County,* 520 U.S. at 415).


1.  Municipal Liability for the No-Knock Search Warrant

Plaintiffs argue that NRH is liable under section 1983 for Troy Davis's death because "NRH maintained the unconstitutional policy of treating narcotics warrants as hazardous warrants." (Pls.' Resp. Mot. Summ. J. 23.) Specifically, Plaintiffs point to NRH police department general order 811.05 and argue that the general order defines narcotics warrants as hazardous warrants. *Id.* Plaintiffs then claim that "NRH considers hazardous warrants to be synonymous with no-knock warrants." *Id.* Acting under this policy, Plaintiffs argue that the NRH police department had a

8

custom of executing all narcotics warrants on a no-knock basis. *Id.* at 24.

The common law knock-and-announce rule forms an integral part of the reasonableness inquiry into a search and seizure under the Fourth Amendment. *See Wilson v. Arkansas*, 514 U.S. 927, 930 (1995). Generally, before entering a dwelling, officers must knock and announce their presence. *Id.* at 934-36. But the knock-and-announce requirement can give way to circumstances that present a threat of physical violence, or where police officers have reason to believe that evidence would likely be destroyed. *Richards v. Wisconsin,* 520 U.S. 385, 391 (1997)(citing *Wilson,* 514 U.S. at 936). Blanket rules allowing for "no-knock" entries based on over-generalizations about today's drug culture or other general categories of criminal behavior have been rejected. *Richards,* 520 U.S. at 392; *United States v. Cantu,* 230 F.3d 148, 152 (5th Cir. 2000).

> In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be danger-ous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. This standard—as opposed to a probable-cause requirement—strikes the appropriate balance between the legitimate law-enforcement con-cerns at issue in the execution of search warrants and the individual privacy interest affected by no-knock entries.

*Richards,* 520 U.S. at 394.

General order 811.05 does not use the term "hazardous warrants" or "no-knock" warrants. Instead, that order provides,

> The Special Weapons and Tactics (S.W.A.T.) team will serve any search and arrest warrant **that has a high potential for armed confrontation.** These type of warrants **may** consist of the following types of offenses or circumstances: narcotics, murder, armed robbery, kidnapping, mental patients, and known violent offenders. (Emphasis added.)

The official policy is that a special tactical team is to serve warrants when there is a high potential for armed confrontation. The policy goes on to illustrate examples of when there may be a high potential for armed confrontation. But those examples are not a part of the official policy. And it neither authorizes nor directs the blanket execution of warrants on a no-knock basis in circumstances where a high potential for armed confrontation may occur. Thus, on its face, the general order is not, itself, unconstitutional. Consequently, Plaintiffs have the burden of showing that the general order "was adopted or maintained . . . with deliberate indifference as to its known or obvious consequences . . . ." *Nacogdoches County,* 379 F.3d at 309. Establishing deliberate indifference "generally requires that a plaintiff demonstrate at least a pattern of similar violations." *Id.* (internal quotations and citations omitted).

Here, Plaintiffs have not presented any evidence that the general order has been adopted or maintained with a deliberate indifference to Fourth Amendment constitutional rights. They

10

present no evidence that the NRH police department developed a practice or custom of executing all narcotics warrants on a no-knock basis. In fact, the policy itself supports various implementations. The policy only requires that a special tactical team execute warrants where there is a high potential for armed confrontation. But that does not translate into an authorization for a no-knock entry in every instance. The special tactical team could decide, based on the circumstances of the particular situation, that although there is a potential for armed confrontation, knocking and announcing may be safer for the officers because it will give the suspects a chance to surrender before any armed confrontation ensues. The reality is that police officers are well aware that a surprise, unannounced entry of a dwelling poses its own dangers. The surprise in and of itself may cause the armed confrontation. It makes little sense that the NRH police department would have an official policy or practice of blanket no-knock entries in cases where there is a high potential for armed confrontation. The sensible policy and practice is to let the officers decide, on a case-by-case basis and after concluding that reasonable suspicion exists to forgo a knock-and-announce entry, whether the benefits of surprise outweigh its risks. This probably explains Plaintiffs failure to present any evidence to support their claim that the NRH police department executes all narcotic warrants on a no-knock basis.

Nevertheless, even if Plaintiffs did present evidence that the NRH police department has a practice of executing all narcotics warrants on a no-knock basis, that fact would not be dispositive here. The fact that the NRH police department has a practice based on the implementation of an official policy of unconstitutionally forgoing the knock-and-announce requirement is irrelevant because the evidence here clearly establishes that the officers had a reasonable suspicion from the particular circumstances that justified their no-knock entry into the Davis residence. *See Richards,* 520 U.S. at 395 (holding blanket rule for no-knock unconstitutional but still upholding officers no-knock entry because circumstances of case established officers had reasonable suspicion that evidence may be destroyed). The Court has already decided in its September 30 order that the evidence justified the officers' no-knock entry into the Davis home. Thus, the officers' no-knock entry was not a constitutional violation. Accordingly, Plaintiffs have failed to meet the third element to establish municipal liability.

Next, Plaintiffs argue NRH is liable because it failed to maintain adequate policies to ensure the accuracy of information contained in a probable-cause affidavit and to limit the use of "boilerplate" information. (Pls.' Resp. Mot. Summ. J. 29.) Plaintiffs' complaint is that the general orders did not require that an affidavit be reviewed by a superior or a district attorney.

12

*Id.* Plaintiffs claim that Officer Wallace's affidavit "relied on falsified information and information from an unverified tipster." *Id.* at 30. According to Plaintiffs, "Had NRH adopted policies to verify the information contained in the probable cause affidavit the Davis warrant would not have been issued and Troy Davis would still be alive." *Id.* at 31.

It is well settled that "inadequate, but constitutional policies and decisions rise to the same, actionable plane as the unconstitutional policies . . . only upon a showing that they were enacted or made with deliberate indifference to their possible unconstitutional consequences." *Gonzalez v. Ysleta Independent School District,* 996 F.2d 745, 759 (5th Cir. 1993); *Trepagnier,* 142 F.3d at 796. That notwithstanding, Plaintiffs must still prove, as an element of municipal liability, that they actually suffered a constitutional deprivation directly caused by an inadequate municipal policy.

Plaintiffs raise the same complaints regarding Officer Wallace's affidavit that were addressed by the Court in its September 30 order. There, the Court considered, in the light most favorable to Plaintiffs, their claim that the affidavit contained false and boilerplate information, the fact that the affidavit was based on an unverified informant, and the fact that Officer Wallace allegedly "shopped around" until he found a judge willing to issue the warrant. All of these contentions were rejected by the Court,

13

and the Court concluded that "a reasonable officer would have believed that probable cause existed to obtain a search warrant." Thus, Plaintiffs fail to prove that additional policies requiring the verification of information in an affidavit would have resulted in the warrant's not being issued.

Even still, the Court has concluded that Officer Wallace acted reasonably when he believed probable existed for a warrant. Since Officer Wallace is not liable for following the policies of the NRH police department in seeking the no-knock search warrant for the Davis home, NRH cannot be held liable under a claim that those same policies are inadequate. Thus, the Court need not decide if the NRH policies provide inadequate oversight on the obtaining of a search warrant because the policies did not lead to a constitutional violation in this case.

2. Municipal Liability for Inadequate Policies Regarding Psychological Testing

Plaintiffs complain that "NRH did not require any psychological testing of potential tactical team members." (Pls.' Resp. Mot. Summ. J. 26.) This policy is constitutionally inadequate, Plaintiffs argue, because tactical team members are individuals who will routinely find themselves in violent or high-risk situations making mental stability crucial. *Id.* Plaintiffs maintain, "In order to ensure that an individual is prepared to handle the stresses of the tactical team, that person needs to be evaluated

14

not only physically, but mentally." *Id.*

To support their argument, Plaintiffs rely on a September 1998 memo from Detective Greg Stilley to Chief Shockley and Officer Wallace opining that the selection process for tactical team members was inadequate. *Id.* at 27. Detective Stilley had come to this conclusion after attending "a school put on by the Texas Tactical Peace Officers Association." (Pls.' App. Supp. Resp. Mot. Summ. J. 2522-2523.) And in particular, Detective Stilley complained that team members "have not taken a psychological examination." *Id.*

Plaintiffs argue that the failure to require a psychological examination "can be directly linked" to Troy Davis's death. (Pls.' Resp. Mot. Summ. J. 28.) Their argument centers on Officer Hill's selection as a tactical team member.

> [Allen] Hill . . . had an adverse employment history that was tainted by everything from public exposure, sexual assault, aggressive actions, and paranoia. Regardless of his known adverse history, Hill was selected . . . for the . . . tactical team . . . . Evaluating Hill for psychological problems and removing him from the . . . tactical team could have avoided this tragic event. If Hill had gone through a formal psychological screening, he likely would not have been selected for the . . . tactical team . . . .

*Id.* at 29.

The explicit wording of Plaintiffs' argument reveals its weakness. Plaintiffs argue that a psychological evaluation of Officer Hill "could have" avoided Troy Davis's death and that "if"

15

Officer Hill had been psychologically evaluated, he "likely" would not have been selected. It's not enough that a municipality's failure to enact an adequate policy "could have" caused the constitutional violation and that "if" only the municipality had enacted an adequate policy the constitutional violation "likely" would not have occurred. Plaintiffs are required to establish that the failure to implement psychological testing directly resulted in Officer Hill's shooting Troy Davis, and this direct connection must be more than "but for" causation. Plaintiffs' use of "could have," "if," and "likely" reveals their speculation that a psychological evaluation might have disqualified Officer Hill.

Even assuming Plaintiffs established causation, they fail to present any evidence that the failure to implement psychological testing was due to deliberate indifference. "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Smith v. Brenoettsy,* 158 F.3d 908, 912 (5th Cir. 1998). Inactions by officials that are merely inept, erroneous, ineffective, negligent, or even grossly negligent do not amount to deliberate indifference. *Alton v. Texas A & M University,* 168 F.3d 196, 201 (5th Cir. 1999); *Piotrowski,* 237 F.3d at 579. Instead, deliberate indifference is about intentional and culpable conduct. The test for deliberate indifference requires that a municipality have

16

actual knowledge that its inadequate policy will result in a constitutional violation or that it is so readily obvious that its inadequate policy will result in a constitutional violation that the municipality must be charged with actual knowledge; and notwithstanding this knowledge, the municipality acted intentionally and consciously in disregard of a probable constitutional violation.  To satisfy this test, a plaintiff usually must demonstrate a pattern of violations that establishes an obvious need for improved policies to prevent an almost certain constitutional violation.

> It may happen that in light of the duties assigned to specific officers or employees the need for more or different [policies] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need.

*City of Canton, Ohio, v. Harris et al.,* 489 U.S. 378, 390 (1989).

Here, Plaintiffs have produced no evidence that Chief Shockley was deliberately indifferent to the known or obvious consequences that constitutional violations would almost certainly result from the failure to place potential tactical team members under a psychological evaluation.  Plaintiffs have presented no evidence of a pattern of constitutional violations committed by tactical team members who had psychological issues.  And Plaintiffs present no evidence that any policymaker was aware that the failure to subject Officer Hill to a psychological evaluation would result in his use

17

of excessive force.

While the use of psychological testing as a prerequisite to membership in the tactical team may be a good policy goal, the Court is reluctant to equate the failure to do so with deliberate indifference. There are just too many reasons why a police department may decide not use psychological evaluations. For instance, the police department may rely on annual evaluations and daily interactions to identify possible mental instability that requires intervention. Also, the police department may rely on its initial hiring procedures designed to identify qualified candidates. Liability under section 1983 is not premised on the notion that the municipality failed to take all the steps that it could. Instead, liability is premised on the notion that the municipality is aware of the constitutionally suspect nature of its policy or that it is obvious that the steps it is currently taking are inadequate to prevent what will almost certainly be a constitutional violation.

3.  Municipal Liability for Inadequate Training

Plaintiffs complain that NRH failed to adequately train its police department supervisors "on how to select qualified people" for the tactical team. (Pls.' Resp. Mot. Summ. J. 34-35.) Plaintiffs argue that "supervisors need to be trained on the importance of selecting qualified and stable members." *Id.* at 35.

The Court finds this argument to be nothing more than an extension of their argument on the failure to use a psychological evaluation as a tool to select tactical team members. Nevertheless, Plaintiffs still fail to establish deliberate indifference. Plaintiffs have presented no evidence showing a pattern of tactical team members' using unconstitutional excessive force that is a direct result of NRH's deliberate indifference to how it trains its police department supervisors on the selection of qualified candidates for the tactical team. Moreover, Plaintiffs fail to establish that NRH's failure to adequately train its police supervisors is what caused Officer Hill to shoot Troy Davis. The alleged constitutional violation must have directly resulted from the action of NRH and not Officer Hill, or else its "liability collapses into respondeat superior liability." *Bryan County,* 520 U.S. at 415.

Finally, Plaintiffs argue that once selected, tactical team members "were not adequately trained on the proper manner in which to constitutionally conduct narcotics investigations and how to execute no-knock warrants." (Pls.' Resp. Mot. Summ. J. 35.)

> In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident. Thus, permitting cases against cities for their "failure to train" employees to go forward under § 1983 on a lesser standard of fault would result in *de facto respondeat superior* liability on municipalities—a result we rejected in *Monell* . . . . It would also engage the federal courts in an endless exer-

19

>     cise of second-guessing municipal employee-
>     training programs. This is an exercise we
>     believe the federal courts are ill suited to
>     undertake, as well as one that would implicate
>     serious questions of federalism.

*Canton,* 489 U.S. at 392. Following the Supreme Court's admonition here, the Court is reluctant to second-guess the training the NRH police department gave to its tactical team members. This is especially so when Plaintiffs have failed to establish any pattern of constitutional violations by tactical team members that directly resulted from a deliberate and conscious disregard to adequately train.

III. Conclusion

Accordingly, for the above reasons, the Court GRANTS NRH's summary-judgment motion. All claims against NRH are hereby DISMISSED WITH PREJUDICE and NRH is DISMISSED from this case.

SIGNED March 13, 2007.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE