IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ESTATE OF TROY JAMES DAVIS, et al. | § § § |
| VS. | § CIVIL ACTION NO. 4:00-CV-438-Y § (Consolidated with 4:01-CV-1008-Y) |
| CITY OF NORTH RICHLAND HILLS, et al. | § § § |

ORDER DENYING MOTION FOR A NEW TRIAL
OR, ALTERNATIVELY, FOR RELIEF FROM ORDER AND JUDGMENT

The Court has before it Plaintiffs' motion (doc. #377) for a new trial or, alternatively, for relief from the Court's order granting the motion for summary judgment and rendering judgment in favor of defendant City of North Richland Hills (hereinafter "the City" or "NRH"). Plaintiffs contend that the Court's order is against the great weight and preponderance of the evidence, that the Court's order misinterprets and ignores evidence, and that a material portion of the evidence relied upon by the Court is not credible or reliable. After review, the Court concludes that Plaintiffs' motion should be DENIED.

I. Factual Background

The cause of action against NRH arises out the execution of a "no-knock" search warrant of the residence of Barbara Jean and Troy James Davis that resulted in the shooting death of Troy Davis. A detailed accounting of the facts of this case are contained in the Court's September 30, 2003, and March 13, 2007, orders and will not be repeated here.

In summary, acting on information provided by Chris Davis, Troy Davis's cousin, Police Sergeant J. A. Wallace of the NRH Police

Department ("NRH PD") obtained a no-knock search warrant for the Davis residence. Chris Davis had reported that Barbara and Troy Davis were growing marijuana in their home and that Troy Davis possessed several handguns. Sergeant Wallace prepared an affidavit to establish probable cause for the issuance of a search warrant for the Davis home and requested a "no-knock entry" be permitted "in order to reduce the risk of injury to officers and individuals . . ., and to further prevent the destruction of evidence upon arrival . . . ." State District Court Judge Sharen Wilson authorized the search and no-knock entry.

Allen Hill was a NRH police officer and was part of a Special Weapons and Tactics ("SWAT") team that executed the no-knock search warrant on the Davises' home. Officer Hill was the first to enter the Davis residence, and it is undisputed that Officer Hill fatally shot Troy Davis within seconds after entering. The circumstances under which Officer Hill shot Troy Davis, however, are hotly contested.

On September 30, 2003, the Court granted summary judgment on the basis of qualified immunity for all of the individual defendants except Officer Hill, Sergeant Wallace, and Police Chief Tom Shockley. The Court denied Officer Hill's summary-judgment motion regarding his shooting of Troy Davis. The Court granted Sergeant Wallace and Chief Shockley summary judgment on all of Plaintiffs' claims against them except for Plaintiffs' claim that they failed to adequately supervise Officer Hill. The United States Court of Appeals for the Fifth Circuit reversed the Court's decision and held that Sergeant Wallace

and Chief Shockley were entitled to qualified immunity against Plaintiffs' claim that they failed to adequately supervise Officer Hill. *See Estate of Davis v. City of North Richland Hills,* 406 F.3d 375 (5th Cir. 2005). Consequently, Plaintiffs' only viable claims were against Officer Hill for his shooting of Troy Davis and against the City for allegedly adopting unconstitutional policies, practices, or customs and for allegedly failing to adopt constitutionally adequate policies, thus causing Plaintiffs to be deprived of their rights under the Fourth and Fourteenth Amendments to the Constitution.

On March 13, 2007, the Court granted summary judgment in favor of the City, concluding that Plaintiffs had failed to present a genuine issue of material fact that either a policy, practice, or custom of the City or the City's failure to enact an adequate policy was the moving force behind Officer Hill's shooting of Troy Davis or the moving force behind Plaintiffs' alleged constitutional deprivations. Plaintiffs have filed a motion that essentially asks the Court to reconsider its decision. *See Simmons v. Reliance Std. Life Ins.,* 310 F.3d 865, 868, n.1 (5th Cir. 2002)("It is common practice to refer to Rule 59 motions as motions for rehearing or motions for reconsideration.")(internal quotations and citations omitted). The Court will address Plaintiffs' objections of significance to the Court's decision.

II. **The Court Misinterpreted The Evidence And Plaintiffs Presented Evidence That The NRH Police Department Had A Blanket Unconstitutional Policy Of Executing All Narcotics Warrants On A No-Knock Basis**

In its order granting the City's summary-judgment motion, the Court found that Plaintiffs had failed to present any evidence to support their claims that the NRH PD executed all narcotics warrants on a no-knock basis. Plaintiffs contend that the Court was incorrect because its decision was based solely on the police department's general orders and ignored or misinterpreted the testimony of Officer Crane, Sid Johnson, and numerous NRH SWAT team members. Plaintiffs argue that their evidence together with the Department's general orders established that a genuine issue of material fact existed as to whether the City "had an unconstitutional blanket policy of treating all narcotics warrants as hazardous warrants," and "executed all narcotics warrants on a no-knock basis" using SWAT team officers. (Pls.' Br. at 2-4.) That evidence, however, even when viewed in light most favorable to Plaintiffs, does not create a genuine issue of material fact as to whether the City had an unconstitutional policy, practice, or custom of executing all narcotics warrants on a no-knock basis.

First, even assuming[1] the NRH PD had a blanket policy of treating all narcotics warrants as "hazardous warrants," all that meant was that the Department's SWAT team was responsible for executing those warrants. As explained in the Court's opinion, general order 811.05

---

[1] In its original opinion, the Court concluded that the NRH PD did not have a blanket policy of treating all narcotic warrants as hazardous warrants. The Court reaffirms that conclusion here.

4

does not use the term hazardous warrants, but instead provides that the department's SWAT team "will serve any search and arrest warrant that has a high potential for armed confrontation." (Pls.' App. at 2520.) The general order includes warrants involving narcotics offenses as one that may have a high potential for armed confrontation. Thus, even if the general order contains a blanket policy for having the NRH SWAT team execute all narcotics warrants because they are deemed to involve a high potential for armed conflict, there is nothing unconstitutional about having a policy that requires a specially trained unit of officers in a police department execute all warrants for certain offenses (such as narcotics offenses) because the police department has predetermined that those offenses frequently involve a high potential for armed confrontation.

Second, Officer Crane testified that the terms or phrases "hazardous warrants," "high risk warrants," and "high potential for armed confrontation" are all synonymous and mean the same thing. (*Id.* at 2622.) He explained that to him, high-risk warrants, hazardous warrants, and warrants with a high potential for armed conflict all related to the SWAT team and that "everyone that I was associated with **was handled with a no-knock warrant.**" (*Id*. at 2622.)(Emphasis added.) Johnson testified that the NRH PD considered narcotics warrants to be hazardous warrants and that the term "hazardous warrants" and "no-knock warrants" were synonymous. (*Id*. at 2633.)

Neither Officer Crane's nor Johnson's testimonies support the inference that the City had an unconstitutional policy, practice, or

5

custom of executing all narcotics warrants on a no-knock basis. According to Officer Crane's testimony, the SWAT team executed all warrants where there was a high potential for armed confrontation and, as a SWAT team member, every one he participated in was done with a no-knock warrant. That implies that a judicial officer included in the search or seizure warrant authorization to forgo the traditional common-law knock-and-announce requirement. Johnson simply stated that hazardous warrants were synonymous with no-knock warrants, which, again, implies a warrant where a judicial officer has authorized the police to forgo the knock-and-announce requirement. Even when viewed in light most favorable to Plaintiffs, Crane's and Johnson's testimonies do not support the inference that the City had a policy, practice, or custom of unconstitutionally executing all narcotics warrants on a no-knock basis.

Finally, the testimony from numerous SWAT team members also failed create a genuine issue of material fact. Even taking as true the SWAT team members' statements that they executed every narcotic warrant they were given without knocking and announcing, those statements do not support a finding that the City had an unconstitutional policy, practice, or custom of executing all narcotics warrants on a no-knock basis. Plaintiffs failed to present any evidence showing that a genuine issue of material fact existed as to whether the City had a policy, practice, or custom that the NRH PD would execute all narcotics warrants on a no-knock basis regardless of whether there was reasonable suspicion that knocking and announcing

6

would be dangerous, futile, or allow for the destruction of evidence. *See Richards v. Wisconsin,* 520 U.S. 385, 394 (1997)(holding there must be reasonable suspicion that knocking and announcing would be dangerous, futile, or allow for the destruction of evidence before officers can execute a warrant on a no-knock basis). There is no evidence that the NRH SWAT team, pursuant to an official policy, practice, or custom, would execute a narcotics warrant on a no-knock basis even if the warrant failed to contain authorization for a no-knock entry and even if the SWAT team lacked any reasonable suspicion necessary to justify the warrant's no-knock execution. *See Richards,* 520 U.S. at 396 n.7 ("A magistrate's decision not to authorize a no-knock entry should not be interpreted to remove the officer's authority to exercise independent judgment concerning the wisdom of a no-knock entry at the time the warrant is being executed."). At best, Plaintiffs have adduced evidence that the NRH SWAT team handles most narcotics warrants and that the SWAT team executes many, perhaps all, narcotics warrants on a no-knock basis.

The execution of most or nearly all narcotics warrants on a no-knock basis does not, in and of itself, prove or even create a genuine issue of material fact regarding whether the City had a policy, practice, or custom of allowing the NRH PD to unconstitutionally execute those warrants on a no-knock basis. It is well known that many narcotics warrants end up being executed on a no-knock basis because those authorizing their execution or those actually executing them recognize that persons associated with illegal drug activity

often carry weapons and that, because of their physical properties, narcotics are easily and quickly destroyed. *See United States v. Banks,* 540 U.S. 31, 38 (2003)("what matters is the opportunity to get rid of cocaine, which a prudent dealer will keep near a commode or kitchen sink"); *Mason v. Lowndes County Sheriff's Dep't.,* 106 Fed.Appx. 203, 208 (5th Cir. 2004)("The fact that people associated with drugs often carry weapons should be considered when deciding the reasonableness of a no-knock entry."); *United States v. Washington,* 340 F.3d 222, 227 (5th Cir. 2003)(recognizing "firearms are tools of the trade of those engaged in illegal drug activities"). In light of the fact that the standard for reasonable suspicion "is not high," *Washington,* 340 F.3d at 226, that drug dealers are often armed and dangerous, and that drugs can be easily and quickly disposed of, it is not surprising or disturbing to find that a police department may task a specially trained unit of officers with handling narcotics warrants or that a high number of narcotics warrants are executed on a no-knock basis.

III. Sergeant Wallace's Search Warrant Affidavit Lacked Probable Cause And Reasonable Suspicion To Support The Issuance Of A No-Knock Search Warrant

In its opinion, the Court stated that even if the City had a blanket and unconstitutional policy, practice, or custom of executing all narcotics warrants on a no-knock basis, that would not be dispositive in this case because the evidence showed that the there was reasonable suspicion of danger that justified the officers' no-

8

knock entry into the Davis residence. Plaintiffs contend that the Court ignored the fact that Sergeant Wallace's affidavit used to obtain the search warrant was unreliable, incredible, lacked requisite corroboration, and contained numerous errors and false statements. Plaintiffs point out that the Second District Court of Appeals, Fort Worth, Texas, ruled that the affidavit prepared by Sergeant Wallace lacked probable cause and contained "statements made with reckless disregard for the truth." *See Davis v. State,* 144 S.W.3d 192, 205 (Tex.App.—Fort Worth [2nd Dist.] 2004, pet. denied). Plaintiffs contend that they presented evidence that Sergeant Wallace had a reputation for falsifying reports, planting evidence, and lying. And they contend that they presented evidence consisting of experts who opined that Sergeant Wallace's actions were unreasonable because he inadequately investigated the facts before seeking a no-knock search warrant and that, in the experts' opinions, Sergeant Wallace was deliberately indifferent to the constitutional rights of Plaintiffs. Thus, Plaintiffs argue, "no probable cause existed for the warrant" and there was no reasonable suspicion of danger, futility, or destruction of evidence to justify a no-knock execution of the warrant.

The Court did not ignore any of Plaintiffs' evidence. In its March 13, 2007, order, the Court referred Plaintiffs to its earlier September 30, 2003, order that fully analyzed whether the no-knock warrant issued by Judge Wilson was supported by probable cause to search the Davis residence and reasonable suspicion to forEgo the

9

common-law knock-and-announce requirement. In their response to the City's summary-judgment motion, Plaintiffs raised these same arguments and complaints about Sergeant Wallace and his affidavit. They were already addressed and rejected by the Court in its September 30 order (except for the Fort Worth court of appeals decision, which was not rendered until 2004). Even in light of the decision of the state court of appeals, the Court declined to reverse itself and hold that the no-knock search warrant of the Davis residence was not supported by probable cause and reasonable suspicion.[2] The Court concluded that, as a matter of law, the NRH SWAT team's no-knock entry and search of the Davis residence was pursuant to a warrant that was supported by probable cause and reasonable suspicion. Consequently, Plaintiffs were incapable of proving that an unconstitutional policy, practice, or custom of the City was the moving force behind a constitutional violation since no constitutional violation had occurred.

But even assuming that the warrant were not supported by probable cause and reasonable suspicion, Plaintiffs still have failed to establish or create a genuine issue of material fact as to whether any alleged unconstitutional policy, practice, or custom of the City was the moving force behind Sergeant Wallace's decision to seek a no-knock

---

[2] It should also be noted that the Court's decision was in the context of whether Sergeant Wallace was entitled to qualified immunity based on his actions and the state of the law in 1999. The opinion of the state court of appeals is in the context of reviewing a trial judge's denial of a motion to suppress evidence and applied the law as it existed in 2004. This Court concluded that in 1999, it was "unclear exactly how much independent corroboration an officer must have made when relying on a tip from a first-time, relatively unknown . . . informant in order to establish probable cause for the issuance of a search warrant." (Court's Sep. 30, 2003, Order at 27.) The Court went on to hold, alternatively, that even if the law was so established in 1999, "a reasonable officer in Wallace's position would have believed that it was not unlawful to obtain a search warrant based on the information provided to him by Chris Davis." (*Id.*)

10

search warrant for the Davis residence. It is well settled that "a municipality may not be held liable . . . on the basis of *respondeat superior*." *Johnson v. Nacogdoches County,* 379 F.3d 293, 308 (5th Cir. 2004). Rather, to establish municipal liability, Plaintiffs are required to prove three elements: (1) a policy (2) of the municipal's policymaker (3) that is the moving force behind a violation of a constitutional right. *See Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001).

Plaintiffs' arguments and evidence attacking the legitimacy of the no-knock warrant focus on alleged improprieties by Sergeant Wallace. But in all of their complaints and allegations regarding Sergeant Wallace's alleged misconduct, they fail to show that an unconstitutional policy, practice, or custom of the City was the moving force behind Sergeant Wallace's alleged misconduct or Officer Hill's shooting of Troy Davis. Without meeting that requirement, Plaintiffs' case devolves into *respondeat superior* liability for the City.

IV. NRH Police Department Failed To Have Adequate Command And Control Policies To Supervise Sergeant Wallace

Plaintiffs complain that the Court, in its opinion, failed to address their argument that the City "had unconstitutional command and control policies [that] resulted in [Sergeant Wallace], a person who had a known history of falsifying reports, planting evidence, and misrepresenting facts, not having any checks or balances on his behavior." (Pls.'s Mot. at 25.) Plaintiffs are correct that the

11

Court did fail to address this argument in its opinion. But the Court notes that in their original response to the City's summary-judgment motion, Plaintiffs' argument regarding the City's alleged failure to enact adequate checks and balances over Sergeant Wallace's conduct amounted to a little more than a page in a thirty-eight page pleading and contained no citations to relevant case law. In contrast, their argument in this motion is more than five pages long in a thirty-page pleading, but Plaintiffs still fail to cite to any relevant case law.

Motions under Federal Rule of Civil Procedure 59(e) "must clearly establish either a manifest error of law or fact or must present newly discovered evidence . . . . These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Simon v. United States,* 891 F.2d 1154, 1159 (5th Cir. 1990). Consequently, the Court will consider Plaintiffs' motion in light of their argument made in their original response to the City's summary-judgment motion.

Plaintiffs contend that the City's failure to enact additional policies to provide for additional oversight of Sergeant Wallace's duties as both the head of the NRH SWAT team and the Special Investigations Unit ("SIU") resulted in their constitutional rights' being violated. Plaintiffs complain that it was "constitutionally inadequate" to allow Sergeant Wallace the authority to operate as the head of the SWAT team and SIU "with no meaningful checks and balances." (Pls.' Resp. to Def.'s Summ. J. Mot. at 31.) But the crux of Plaintiffs' argument is this: "Had [Sergeant] Wallace been appropri-

ately monitored, he would have never . . . obtained the warrant"; had he never obtained the warrant, Sergeant Wallace "never would have been able to execute the Davis warrant in the manner in which he did"; and had Sergeant Wallace been unable to execute the Davis warrant on a no-knock basis, Officer Hill would not have shot Troy Davis. Concluding, Plaintiffs insist that the "link between [Sergeant] Wallace's actions and Troy Davis's death cannot be seen as attenuated since [Sergeant] Wallace put all of the wheels in motion [that] led up to and caused Troy Davis's death." (Pls.' Resp. to Def.'s Summ. J. Mot. at 32.)

Although not entirely clear, it seems Plaintiffs contend that Sergeant Wallace is directly responsible for two deprivations of Plaintiffs' constitutional rights: (1) the issuance of a no-knock search warrant for the Davis residence that was not support by probable cause and reasonable suspicion, and (2) the shooting death of Troy Davis. Plaintiffs' arguments fail, however, because they amount to nothing more than "but for" causation, rest on speculation, and fail to show any deliberate indifference on the part of the City.

In essence, Plaintiffs' argument is a speculation that but for Sergeant Wallace's not having additional supervision, he never would have obtained a warrant authorizing a no-knock entry and search of the Davis residence. And but for there not being additional supervision over Sergeant Wallace that could have prevented him from getting a no-knock warrant for the Davis residence, Officer Hill never would have shot Troy Davis. While Plaintiffs clearly try to show that Sergeant Wallace "put all of the wheels in motion" that led up to and caused

13

their alleged constitutional deprivations, they failed to show that the City's failure to have additional oversight in place was the moving force behind their alleged constitutional deprivations.

A plaintiff must prove that the municipality's failure to act was the moving force behind the alleged constitutional violation. This means that there must exist a direct casual connection between the failure to act and the constitutional deprivation, and this connection must be more than mere "but for" causation. *Piotrowski,* 237 F.3d at 580; *Fraire v. City of Arlington,* 957 F.2d 1268, 1281 (5th Cir. 1992). This demanding requirement is so that

> acts of the municipality [are distinguished] from acts of employees of [that] municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible. *Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts "of the municipality" — that is, acts which the municipality has officially sanctioned or ordered.

*Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986).

Plaintiffs also failed to show that the City acted with deliberate indifference. Deliberate indifference involves intentional and culpable conduct and requires that a municipality have actual knowledge that its failure to act will result in a constitutional violation or that it is so readily obvious that its failure to act will result in a constitutional deprivation that the municipality must be charged with actual knowledge. And it must be shown that notwithstanding this knowledge, the municipality acted intentionally and consciously in disregard of a probable constitutional violation.

To satisfy this test, a plaintiff usually must demonstrate a pattern of violations that establishes an obvious need for improved policies to prevent an almost certain constitutional violation.

> It may happen that in light of the duties assigned to specific officers or employees the need for more or different [policies] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need.

*City of Canton, Ohio, v. Harris et al.,* 489 U.S. 378, 390 (1989).

Plaintiffs place great emphasis on Sergeant Wallace's alleged misconduct, and they go to great lengths to establish that but for Sergeant Wallace's alleged improprieties, Plaintiffs would not have been deprived of their constitutional rights—and Troy Davis would be alive today. But in the process, Plaintiffs not only failed to show that it was the City's lack of additional supervision over Sergeant Wallace that was the moving force behind Plaintiffs' alleged constitutional deprivations, they also failed to show that the need for additional oversight over Sergeant Wallace was so obvious to prevent a likely violation of constitutional rights that the City's failure to act was the result of its deliberate indifference to the need. "These requirements must not be diluted, for 'where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability.'" *Snyder v. Trepagnier,* 142 F.3d 791, 796 (5th Cir. 1998)(quoting *Bryan County,* 520 U.S. at 415).

15

IV. Conclusion

For the forgoing reasons, Plaintiffs' motion for a new trial or to alter or amend its order and judgment granting the City summary judgment is DENIED.[3]

SIGNED January 30, 2008.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[3] Any aspect of Plaintiffs' motion not addressed in this order as grounds for relief is DENIED for the reasons stated in the Court's September 30, 2003, and March 13, 2007, orders and for the reasons stated in the City's response (doc. #379).